IDALIA RUBÍN VDA. DE VILA y OTROS, demandantes y recurrentes *v.* CARMEN M. GUERRA MONDRAGÓN y OTROS, demandados y recurridos.

*Número:* R-77-142 *Resuelto:* 6 de marzo de 1978

*Jaime Rodríguez Rivera, Uriel G. Candelas, Carlos Rodríguez Sierra, José G. Rolón Rivera* y *Mario Rivera Toll,* abogados de los recurrentes; *José A. Rivera Mercado,* abogado de los recurridos.

SENTENCIA

El causante de los demandantes perdió la vida en un accidente de automóvil. Desde el año 1961 padecía del corazón. En enero de 1967 a los 59 años de edad tuvo un fallo cardíaco. Fue hospitalizado. En el año 1969 volvió a hospitalizarse con otro fallo cardíaco. Para 1970 ya su enfermedad era crítica. Del 1973 en adelante el médico que lo atendía lo veía semanalmente. Estaba siempre bajo sedantes. Aunque no estaba incapacitado para caminar no era aconsejable que lo hiciera solo.

"El día 17 de diciembre de 1973 Don Reymundo, a pesar de su grave condición física, salió de su casa de la Urbanización Villa España para ir a su visita médica semanal con el Dr. Vizcarrondo y para ello usó transportación pública. Para llegar a la oficina del médico tuvo que tomar un vehículo en la Carretera de Bayamón hasta llegar a la Avenida Ponce de León y de ahí se trasladó hasta el área del Condado, más o menos cerca del Hospital Presbiteriano.

La Sra. Carmen Guerra Mondragón de García en la mencionada fecha, y como a eso de las 7:45 de la mañana, conducía el vehículo Pontiac, Modelo 1967 propiedad del Sr. Gabriel Guerra Mondragón, a lo largo de la Avenida Magdalena con dirección de Oeste a Este, o sea, de San Juan hacia Santurce. Llevaba sus hijos a la escuela la cual queda cerca del sitio donde ocurrió el accidente. Estos ocupaban el asiento trasero del carro. Los niños entraban a las 8:00 de la mañana a la escuela.

La Avenida Magdalena permite tránsito en una sola dirección, de San Juan a Santurce, y está provista de dos carriles. A la derecha, yendo de San Juan a Santurce, y después de cruzar la intersección formada por la Avenida Mag-

dalena con la Calle Caribe hay una plaza de recreo; y la Avenida Magdalena una vez pasada la intersección tiene una semicurva hacia la izquierda. El día era soleado aunque según la declaración del Policía Arroyo que investigó el caso había lloviznado algo, temprano en la mañana.

La Sra. Guerra Mondragón conducía su vehículo por el carril de la extrema izquierda. Una vez cruzó la intersección, y entrando a la semicurva a su izquierda, como a 10 ó 15 pies vio surgir un peatón de súbito al frente de su auto; frenó, pero no pudo evitar un impacto entre el peatón y el guardalodo izquierdo de su automóvil. A pesar de que frenó y trató de desviar hacia la derecha siempre impactó a Don Reymundo.

Minutos después de ocurrir el accidente, llegó al sitio el Policía José M. Arroyo. Este encontró al peatón, quien resultó ser Don Reymundo Vilá Polanco, más o menos en el centro del carril izquierdo de la Avenida Magdalena como a una distancia de 20 a 30 pies después de pasada la intersección. A preguntas que le hiciera a Don Reymundo, éste le contestó que cruzaba de Norte a Sur, eso es, como hacia la placita que queda en dicho sitio. Con la ayuda de la Sra. Guerra Mondragón lo montó en el carro-patrulla y lo condujo al Hospital Presbiteriano. Allí se volvió a entrevistar con la Sra. Mondragón después que ésta, con la autorización previa del Policía, había llevado sus niños a la escuela.

La Sra. Guerra Mondragón transita esa ruta a diario y conocía las condiciones de la carretera. Por razón de que a veces el sol da de frente y afecta la visión, usa gafas de sol para proteger la visibilidad del efecto del sol. El día del accidente usaba sus gafas de sol.

Don Reymundo Vilá Polanco trató de cruzar la avenida en la semicurva, fuera del área de la intersección por lo que no podía ser visto por un conductor que se moviera en la dirección en que se movía la demandada Guerra Mondragón hasta no estar bien próximo a él. La condición de la vía de

rodaje en semicurva y la condición de que el sol da de frente obstaculizan la visibilidad del conductor. La semicurva obstruía la visibilidad como de 30 a 40 pies hacia adelante." (Determinaciones de Hechos págs. 4 y 5.) Con estas determinaciones de hechos el Tribunal Superior, Sala de San Juan, Abruña Rodríguez, J. declaró sin lugar la demanda radicada por la viuda y el hijo.

Para sostener el recurso, sostienen los recurrentes que:

"1. Erró el Honorable Tribunal de Instancia al determinar como cuestión de hecho que el accidente no se debió a acto culposo o negligencia de la parte demandada y en consecuencia erró al no determinar el valor de los daños sufridos por la parte demandante.

2. Erró el Honorable Tribunal de Instancia al apreciar la evidencia aportada y hacer conclusiones de la prueba resultante de aquella incurriendo en manifiesto error al declarar la ausencia de culpa y negligencia.

3. Erró el Honorable Tribunal de Instancia al negarse a formular determinaciones de hechos adicionales."

Hemos examinado la exposición narrativa de la prueba y estamos convencidos que la sentencia está sostenida por la prueba.

Se confirma la sentencia.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Díaz Cruz emitió opinión disidente a la que se une el Juez Asociado Señor Irizarry Yunqué. El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Rigau no intervinieron.

(*Fdo.*) Ernesto L. Chiesa

*Secretario*

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz a la que se une el Juez Asociado Señor Irizarry Yunqué.

San Juan, Puerto Rico, a 6 de marzo de 1978

El 17 de diciembre de 1973, a las 7:45 la recurrida Carmen Guerra Mondragón conducía un automóvil "Pontiac" en el que llevaba sus hijos a la escuela a la que debían llegar a las 8:00 a.m. Tomó la Avenida Magdalena que tiene dos carriles de tránsito en la sola dirección de San Juan a Santurce, desplazándose por el carril izquierdo pegado a la acera. La juez sentenciadora en sus conclusiones dice que la recurrida "vio surgir un peatón de súbito" a 10 ó 15 pies al frente, que frenó y hasta trató de desviar hacia la derecha pero siempre arrolló a un hombre de 65 años que había salido esa mañana desde su residencia en Villa España, Bayamón, a cumplir su visita semanal a su médico en el Hospital Presbiteriano. El peatón cayó en el centro de la calle, resultando con laceraciones y abrasiones por todo el cuerpo y fractura del lado izquierdo de la pelvis. Murió 19 días después y hubo prueba médica de que el accidente aceleró la terminación de su vida de paciente cardiaco.

El accidente ocurrió en el tramo de Magdalena, entre Caribe y Cervantes, zona en que por su profusión de tránsito de personas y vehículos, resulta imprudente aun agotar el límite de 25 m.p.h. Una mayor precaución se imponía porque la recurrida conducía a las 7:45 a.m. de frente al sol, y tenía que usar gafas "para proteger la visibilidad" (Sentencia, pág. 5). La razón exonerante de accidente inevitable porque la conductora vio surgir un peatón de súbito a sólo 10 ó 15 pies frente a su Pontiac, queda totalmente enervada y disuelta por la siguiente determinación a la pág. 5 de la sentencia:

"La condición de la vía de rodaje en semi-curva y la condición de que el sol da de frente obstaculizan la visibilidad del conductor. La semi-curva obstruía la visibilidad como de 30 a 40 pies hacia adelante."

Con visibilidad de este modo obstruida no podemos aceptar como excusa que la conductora no pudo ver la víctima hasta

hallarse a 10 ó 15 pies de ella. Si el propio tribunal concluye que el sol de frente disminuía la capacidad de la conductora para ver lo que tenía al frente, la tardanza en la reacción de la recurrida impedida por la insuficiente visibilidad, y no el movimiento súbito[1] del peatón, fue la causa eficiente del accidente.

Avanzar con la visibilidad obstruida, como determinó la juez sentenciadora, es categórica imputación de negligencia total a la conductora. ¿Acaso hay excusa en quien insiste en avanzar para que los hijos lleguen a tiempo a la escuela, lanzando un vehículo poderoso en una vía de circulación densa, *con visibilidad limitada,* a tal velocidad de marcha que su impacto en vez de tocar, acorta la vida?

El accidente de circulación en el presente caso está sancionado por las siguientes disposiciones de la Ley de Vehículos y Tránsito:

Sección 5-1002 (9 L.P.R.A. sec. 1102) *Deberes de los conductores hacia los peatones*

"(a) Toda persona que conduzca un vehículo por las vías públicas vendrá obligada a:

. . . . . . . .

. . . . . . . .

(3) Tomar todas las precauciones para no arrollar a los peatones, debiendo tomar precauciones especiales cuando los peatones fueren niños, ancianos o personas incapacitadas. Estas precauciones serán tomadas *aun cuando el peatón estuviere haciendo uso incorrecto o ilegal de la vía pública.* El uso de la bocina por sí solo no relevará al conductor de responsabilidad criminal, si tal uso no estuviere acompañado por otras medidas de seguridad." (Bastardillas nuestras.)

---

[1] También tenemos una gran preocupación con esta conclusión de movimiento súbito, en vista de que la sala de instancia determinó que la víctima, hombre de 65 años, padecía del corazón desde los 53 con historial de episodios críticos, observación médica contínua, y tomando medicina hasta 4 veces al día al punto que su médico había dicho a los familiares que podía morir en cualquier momento. ¿Le quedaba vigor e inexperiencia para irrumpir súbitamente en una vía pública?

Sección 5-101 (9 L.P.R.A. sec. 841) *Regla básica; límites*

"(a) La velocidad de un vehículo deberá regularse con el debido cuidado, teniendo en cuenta el ancho, tránsito, uso y condiciones de la vía pública. Nadie deberá guiar a una velocidad mayor de la que le permita ejercer el debido dominio del vehículo y reducir la velocidad o parar cuando sea necesario para evitar un accidente. De conformidad con los requisitos expresados anteriormente toda persona deberá conducir a una velocidad segura y adecuada al acercarse y cruzar una intersección o cruce ferroviario, al acercarse a la cima de una pendiente, al viajar por una carretera estrecha o sinuosa, *o cuando existan peligros especiales con respecto a peatones u otro tránsito o por razón del tiempo o las condiciones de la vía pública.*" (Bastardillas nuestras.)

Hasta ahora este Tribunal no había tenido dificultad en la aplicación de tan claros preceptos que fijan la obligación del conductor hacia los peatones, de mayor rigor cuando éstos son niños, ancianos o personas incapacitadas. En 1956 dijimos que ". . . En cuanto al 'debido cuidado' que le impone al chófer el poder tuitivo del Estado, con relación a la velocidad a que debe conducir un vehículo, resulta claro que la indagación judicial debe cubrir los siguientes aspectos: (1) si el posible infractor tenía el debido dominio del vehículo que conducía y (2) si reduciendo la velocidad o parando el vehículo el posible infractor hubiera podido evitar atropellar a alguna persona o chocar con algún vehículo u otro artefacto *dentro de la carretera* o que estuviera entrando en la misma." (Énfasis en el original.) *Pueblo* v. *Pérez*, 79 D.P.R. 487, 493 (1956). Reiteramos la regla sobre control y detención del automóvil para evitar el atropello en *Pueblo* v. *Ortiz Morales*, 86 D.P.R. 456, 465 (1962); y también al revocar la sentencia que como en el caso de autos había desestimado la demanda de daños y perjuicios, cuando en 1964 dijimos: "la vía franca o el derecho de paso no da licencia para arrollar, por ese solo hecho, a uno que la invada." *Briales Aldrich* v. *Torres*, 89 D.P.R. 815, 821 (1964).

Hoy con más de tres millones de habitantes y cerca de

900,000 vehículos circulando, no vemos razón para que el Tribunal abandone tan valiosa doctrina y menos aún para desviarnos del terso mandato estatutario. Revocaría la sentencia revisada y devolvería el caso a instancia con instrucciones de que se estime la demanda y se fijen las cuantías de daños adecuadas.